IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF Virginia
ROANOKE DIVISION

| | | |
|---|---|---|
| **NATHANIEL TYRONE TERRY,** | ) | **CASE NO. 7:20CV00148** |
| | ) | |
| **Petitioner,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD CLARKE, Director,** | ) | **By: Hon. Glen E. Conrad** |
| | ) | **Senior United States District Judge** |
| **Respondent.** | ) | |

Petitioner Nathaniel Tyrone Terry, proceeding pro se, filed this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under a 2016 order from Halifax County Circuit Court, sentencing him for two counts of distribution of cocaine, third offense. The matter is presently before the court on the respondent's motion to dismiss. Terry elected not to reply to respondent's motion, and the matter is now ripe for disposition. For the reasons set forth below, the court concludes that the respondent's motion to dismiss must be granted.

I. BACKGROUND

On March 4, 2015, a grand jury sitting in Halifax County Circuit Court indicted Terry for one count of conspiracy to distribute cocaine and three counts of distributing cocaine, third offense, in violation of Virginia Code § 18.2-248. Terry's motion to sever trial of the charges was granted. On September 10 through September 11, 2015, Terry had a trial by jury on a charge that he sold cocaine to a confidential informant (CI), on January 8, 2015.

The CI testified that she telephoned Terry, whom she knew as Popeye, in the presence of drug task force officers, to set up a purchase of cocaine for $60. The officers provided her the funds for the purchase, wired her with audio and video equipment, and followed her to Honey Tree Apartments, where they maintained surveillance while she conducted the transaction with Terry.

The CI returned to meet with the officers and turned over the cocaine, wrapped in a lottery ticket. Her testimony was corroborated by the officers, and the recorded telephone call and video transaction were both played for the jury. Lab analysis confirmed that the substance was cocaine.

On cross examination, the CI acknowledged that she was on pre-trial supervision and had six pending charges, three each for distribution and conspiracy to distribute methamphetamine, for which she was hoping to get consideration of a lesser sentence by cooperating with police. She also admitted that she was addicted to opiates and had relapsed twice, resulting in revocation of her bond two different times, while she was working with the task force. In addition to admitted opiate use, she acknowledged having submitted a diluted urine sample before her first bond revocation. Nevertheless, the drug task force officers spoke to the Commonwealth's Attorney to request that the CI be given a second chance. The Commonwealth Attorney filed an agreed motion for the CI's bond to be reinstated. The second time, the CI got bond again, over the Commonwealth's objection, but she had to pay for a new bond, and she was no longer working for the task force. She acknowledged that she had signed an agreement with the task force, under which she agreed not to violate any laws while assisting the police, and she admitted that she knew taking any illegal drugs violated the agreement.

The state also introduced Terry's prior conviction and sentencing order, from January 21, 2011, showing three convictions for distribution/possession with intent to distribute Schedule I or II drugs on October 9, 2009, October 13, 2009, and October 28, 2009. For those convictions, Terry had been evaluated for, accepted into, and successfully completed the Detention and Diversion program, in lieu of incarceration.

Following deliberations, the jury convicted Terry of third offense distribution. Following the sentencing portion of the trial, on September 11, 2015, the jury recommended a sentence of

ten years, the lowest sentence allowed by law for the offense. The court ordered completion of a presentence report.

On November 20, 2015, the Commonwealth nolle prossed the charges of conspiracy and distributing cocaine on August 26, 2014. Terry was tried by the judge without a jury on the remaining charge of distribution, third or subsequent offense, on February 12, 2015. The same CI testified at this trial, and her testimony was similar to that given in the earlier trial, except that she had called Terry to schedule the purchase before she contacted the task force officers. That phone call was not recorded. However, the officers did equip her with funds for the purchase and audio and video surveillance during the transaction. They followed her to the same apartment complex, where she paid Terry $100 for cocaine. The video of the transaction was shown to the court. The same prior conviction order from 2011 was introduced. The trial court overruled Terry's motion to strike the evidence and found him guilty of distribution of cocaine, third or subsequent offense. The court ordered that the matter be consolidated with the prior jury conviction for sentencing, as the presentence report had not yet been completed.

Following consideration of the presentence report, on February 18, 2016, the court sentenced Terry to 10 years, in accordance with the jury's verdict, for the offense occurring on January 8, 2015. On the offense that occurred on February 12, 2015, the court sentenced Terry to 20 years in prison, with 10 years suspended, to run consecutive to the other sentence as required by law, leaving Terry with a total of 20 years to serve and another 10 years suspended. Terry's counsel asked the court to reconsider the finding of guilt entered after the bench trial, based on credibility of the CI. Some time between November 20, 2015, and February 18, 2016, the CI had again relapsed, picked up new charges, and was being held without bond. Counsel argued that this new information further undermined her credibility and that the conviction should be dismissed. The trial court disagreed and denied the motion.

Terry appealed his conviction to the Court of Appeals of Virginia, arguing that the evidence was insufficient to convict him because the CI was incredible as a matter of law; that the prosecution had violated its Brady[1] obligations by failing to provide the signed copy of the CI's written agreement with the task force until the day before trial; and that the judge erred in limiting the defense to introducing an unsigned copy of the agreement to the jury. The court denied the appeal in a per curiam opinion entered December 8, 2016, and Terry's request for reconsideration by a three-judge panel was denied on January 19, 2017. Va. Ct. of App. R.[2] at 77–82, 90. Terry appealed to the Supreme Court of Virginia, raising the same issues, but his petition was refused on October 18, 2017, and his request for rehearing was denied on February 2, 2018. Id. at 94–95. He did not request certiorari from the United States Supreme Court.

On August 3, 2018, Terry signed and placed his state habeas petition in the mail to the Supreme Court of Virginia, alleging three ineffective assistance of counsel issues and two prosecutorial misconduct issues. The court denied his habeas petition on April 26, 2019, and denied his petition for rehearing on June 27, 2019. On July 23, 2019, Terry placed his current § 2254 petition in the mail, but it was not received in the Clerk's office until March 6, 2020. In that petition, he raises the same issues he raised in his state habeas petition:

---

[1] Brady v. Maryland, 373 U.S. 83 (1963) (recognizing a prosecutor's due process duty to disclose material, potentially favorable evidence in its possession to the defendant before trial).

[2] Citations to the record of the Virginia Court of Appeals will be abbreviated as "Va. Ct. of App. R." References to the habeas record in the Supreme Court of Virginia will be cited as "Habeas R."

4

1. Ineffective assistance of counsel in:

    a. Failing to file a motion to quash the "third offense" indictments because Terry had never been convicted of a "second offense" distribution;

    b. Waiving Terry's speedy trial rights on a scheduling order and in requesting a continuance, contradicting Terry's instructions to get him a speedy trial; and

    c. Failing to introduce exculpatory evidence into the trial, namely, the signed copy of the CI work agreement with the police.

2. The Commonwealth's Attorney improperly vouched for the CI's credibility, depriving Terry of his due process rights and resulting in his conviction.

3. The Commonwealth's Attorney violated Terry's right to due process by failing to disclose exculpatory evidence (the work agreement signed by the CI) until the morning of trial.

## II. Discussion

### A. Standard of Review and Limitations on Federal Habeas

A federal court may grant a petitioner <u>habeas</u> relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). There is a presumption of correctness that attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e). When reviewing a state court's assessment of an ineffective assistance of counsel

claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under Strickland v. Washington, 466 U.S. 668 (1984). Cullen v. Pinholster, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013).

A federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 730–31 (1991).

Terry's petition herein was timely filed, and the Commonwealth concedes that he exhausted his habeas claims by raising them in the state proceedings before the Supreme Court of Virginia. The court will now address each of the claims in turn, applying the appropriate standard of review and limitations as discussed above.

B. Ineffective Assistance of Counsel

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687 (1984). Petitioner must meet both prongs of the test.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." Id. at 688. The reviewing court must endeavor "to eliminate the distorting effects of hindsight," and must presume

6

that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. Id. at 689. To establish prejudice under Strickland, Terry must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" which means "a probability sufficient to undermine confidence in the outcome." Id. at 694.

1. Failing to File a Motion to Quash "Third Offense" Indictments

When Terry raised this claim for the first time in the state habeas proceedings, the Supreme Court of Virginia held that the state statute's "third offense" enhancement is based on prior conviction history, not on prior sentencing history. The federal court must accept state court determinations regarding interpretation of the state's law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Accordingly, Terry need not have been sentenced previously for a "second offense" distribution before the "third offense" label could apply. The court looks only at whether he had previously been twice convicted of drug distribution, before the current offense occurred. Noting that the prior sentencing order reflected three separate distribution offenses, occurring on three separate dates in October 2009, the Supreme Court held that Terry had three prior convictions before the charges at issue in the current case. There is nothing unreasonable about the Court's factual determination.

Because the law did not support the motion Terry desired, counsel was not deficient in failing to file such a motion. Counsel is not ineffective for failing to file a meritless motion. Holmes v. Wright, No. 3:12CV675, 2013 WL 5533119 at *2 (E.D. Va. Oct. 14, 2013). Further, because the law is contrary to Terry's interpretation of it, the state courts would not have ruled in his favor if the motion had been filed, so he cannot demonstrate any prejudice. The court will dismiss this claim.

2. <u>Waiving Terry's Speedy Trial Rights Against His Instructions</u>

Review of the record reflects that Terry retained his defense counsel in late March 2015. On April 1, 2015, the Commonwealth's Attorney filed a notice of intent to introduce during the trial lab analysis reports dated October 29, 2014, and March 17, 2015, as required by Virginia Code § 19.2-187.1. On April 2, 2015, defense counsel promptly objected to introduction of the hearsay reports, demanding that the analyst testify in person, subject to cross examination. Thereafter, the circuit court entered a standard fill-in-the-blanks scheduling order on April 21, 2015, endorsed by both counsel, setting a pretrial conference for May 7, 2015. The order contained standard language waiving statutory speedy trial time limits between April 21 and May 7. On May 7, another scheduling order was entered, without defense counsel's signature, setting the matter for pretrial conference on June 20, 2015. Subsequently, an order endorsed by both counsel was entered on May 15, scheduling the pretrial conference for June 10, 2015, and waiving speedy trial from May 15 through June 10. On May 28, 2015, the Commonwealth filed notice of intent to introduce a lab analysis report dated April 24, 2015. Again, defense counsel objected to introduction of the hearsay report without the analyst being present in person and subject to cross examination. On June 10, 2015, the court entered another scheduling order, endorsed by both counsel, setting a pretrial conference for July 2, 2015. Finally, on July 2, 2015, the court entered an order scheduling the matter for jury trial, on the Commonwealth's motion, to begin September 10, 2015. Va. S. Ct. R. at 24–41.

The only continuance request noted in the file up to that point was made by the Commonwealth, not by the defense. Terry alleges that his attorney requested a continuance, "and because it was ordered pursuant to subsection I or J of § 18.2-472.1 or subsection C or D of § 19.2-187.1; [sic] Petitioner's speedy trial rights were denied." The code sections cited by Terry refer to the extension of time given to the government, if needed to procure the analyst's presence in

8

court, when a defendant asserts his right to cross examine a lab analyst rather than have the report alone introduced into evidence. To the extent that some of the scheduling delays were necessitated by counsel's objections to hearsay, such tactical decisions trigger the court's obligation to give due deference to counsel under Strickland. Indeed, as the state habeas court noted, a reviewing court must presume that counsel rendered adequate representation and made all tactical decisions through the exercise of reasonable judgment. Strickland, 466 U.S. at 690.

Likewise, the state habeas court noted that scheduling matters and continuances are tactical decisions for which deference is granted to the defense attorney. Terry has offered no factual evidence to suggest that counsel's decisions were objectively unreasonable or that he was prejudiced by any delay in holding the trial. The state court's decision is totally in accord with Supreme Court precedent. New York v. Hill, 528 U.S. 110, 115 (2000). Further, based on the record, the state court's factual findings are not unreasonable. Accordingly, the court must dismiss this claim.

3. Failing to Introduce Exculpatory Evidence

Terry next alleges ineffective assistance of counsel for failing to introduce exculpatory evidence, the signed copy of the CI's agreement to work with police in making drug purchases. As Terry notes in his petition, however, the trial court denied counsel's request to put the signed agreement into evidence, because making public a copy with the CI's signature and name on it could jeopardize her safety. Pet. at 29, ECF No. 1. Counsel was permitted to introduce a blank copy of the same agreement, to cross examine the CI about signing the agreement and about specific paragraphs in the agreement, including her agreement not to possess drugs except while under task force direct supervision and her agreement not to break any laws during the term of her agreement. Further, counsel was permitted to elicit testimony showing that the CI breached those terms of the agreement on more than one occasion. Trial Tr. Vol. II at 38–48.

The transcript shows that counsel vigorously argued to admit the signed copy of the agreement, not only during the CI's testimony, but also the previous day. Id. As the state habeas court held, counsel cannot be deficient for failing to do that which the trial court refused to allow him to do. Further, there is no prejudice to Terry under the circumstances. The CI acknowledged that she signed the agreement, that the form she signed was identical to the blank agreement marked as defense exhibit 1, and that she knew she was not allowed to use drugs and she could not break the law, under the terms of the agreement. Finally, she admitted relapsing and breaking the agreement, more than once. Id. at 48–53. There is absolutely nothing that a signed copy of the agreement would tell the jury that they did not get from the blank copy and the CI's testimony; as the state habeas court held, there is nothing else counsel could have done that would have been more effective. Accordingly, the state court's decision is a reasonable determination of fact and law. The court will dismiss this claim.

### C. Prosecutorial Misconduct/Due Process Claims

1. Vouching for the CI's Credibility

The state court denied this claim because Terry did not raise this non-jurisdictional issue on direct appeal, which is required under Virginia law. A defendant may not use habeas corpus to raise issues that should have been raised on direct appeal. Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974). Accordingly, the state courts ruled that the issue was procedurally barred from review on the merits.[3] When a state court "clearly and expressly bases its dismissal" of state habeas claims on procedural default under state rules, those procedural rules provide "an independent and adequate ground for dismissal." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). When a

---

[3] The state habeas court also noted that, to the extent Terry was challenging the CI's credibility, this issue had already been determined on direct appeal when Terry challenged the sufficiency of the evidence. As such, the state habeas court would not consider the issue, citing Henry v. Warden, 576 S.E.2d 495, 496 (2003). This court reads Terry's claim strictly as a prosecutorial misconduct claim, alleging a violation of his right to due process.

10

claim has been procedurally defaulted in the state, it is also procedurally defaulted in federal court. A federal court will consider the merits of a procedurally defaulted claim only if the petitioner can show both good cause for the default and actual prejudice because of the claimed federal violation. Coleman, 501 U.S. at 750.

To show good cause for default, Terry must show the existence of some objective factor, external to the defense, that prevented him from raising the issue at the proper time. Id. at 753. Negligence or inadvertence of state trial or appellate counsel is generally not adequate cause for default unless it rises to the level of constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986). Because Terry has offered no explanation for procedural default, he has not shown good cause.

Even if Terry could demonstrate cause for his procedural default, he cannot show prejudice. To show prejudice necessary to overcome procedural default, the petitioner must show that the error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Terry cannot show prejudice here because the prosecutor did not improperly vouch for the CI, contrary to Terry's allegations.

A prosecutor may not vouch for government witnesses. United States v. Johnson, 587 F.3d 625, 632 (4th Cir. 2009); United States v. Sullivan, 455 F.3d 248, 259 (4th Cir. 2006). Vouching occurs when the prosecutor's questions, comments, or arguments to the jury would lead jurors to reasonably believe that the prosecutor was indicating her personal belief in the credibility of the witness. Johnson, 587 F.3d at 632; United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). The prosecutor in this case did not give personal assurances that the CI was trustworthy, nor did she indicate that other evidence not presented to the jury would support the CI's testimony. United States v. Lighty, 616 F.3d 321, 360 (4th Cir. 2010).

A thorough review of the prosecution's arguments to the jury and her questions to the CI reveals no vouching. First, in response to defense counsel's vigorous cross examination of the CI, attempting to impugn her credibility on multiple fronts, the prosecutor asked the witness on redirect whether she had made anything up, whether she had been honest, and whether the prosecutor or the police had told her what to say. Trial Tr. vol. II at 81. Such questioning is not vouching for the witness or giving personal assurances that the prosecutor believes the CI is trustworthy; these inquiries merely give the witness herself a chance to respond to the inferences raised by the cross-examination. Lighty, 616 F.3d at 360. Second, in closing argument, the Commonwealth's Attorney did not vouch for the CI. To the contrary, she said:

> Ladies and gentlemen, the truth is, as you heard today, any confidential informant has certain credibility issues, and we heard about them today. . . [A]lmost every controlled buy involves a confidential informant who themselves [sic] is in trouble and who is seeking to receive some benefit on their charges. That is who a CI is . . . . That is why they don't just send informants out to do what they want on their own. That is why there is recording equipment. That is why there is live surveillance. That is why there is supervision of someone in [CI's] position.
>
> Now, the idea is we don't have to rely entirely on what she says happened. If you have questions about her credibility, you need to look at the overall evidence in this case. I believe we can believe her, because what she says is what we can see and hear in the recordings.

Trial Tr. vol. II at 155–156. Although the prosecutor used the phrase "I believe we can believe her," in context, it is clear that the prosecutor was simply talking in an "innocuous, conversational sense" as she prepared to start summarizing all of the evidence in the case that corroborated the CI's testimony. United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). One hearing the phrase in context would certainly not perceive the prosecutor to be suggesting that the CI was a trustworthy person who should be believed on her own merit. See Johnson, 587 F.3d at 632

12

(holding that use of the phrases "I'm convinced" and "I think" did not constitute vouching when considered in context).

Even if the court were to construe the prosecutor's remarks as vouching, that finding alone would not justify setting aside Terry's conviction. United States v. Young, 470 U.S. 1, 11 (1985). For the comments to constitute a due process violation, Terry would have to show that the prosecutor's remarks were improper and that they "prejudicially affected [his] substantial rights so as to deprive [him] of a fair trial." United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998). The prosecutor's remarks here did not deprive Terry of a fair trial. She summarized the evidence, highlighting all the information that corroborated the CI's testimony—the audio, video, and still pictures that had been introduced and authenticated. Terry's attorney zealously cross-examined the CI, attacking her credibility from many angles. The prosecution was entitled to use the available evidence introduced at trial to counter the picture painted by the defense and to urge the jury to believe the CI and the Commonwealth's other evidence in support of Terry's guilt.

Because the prosecutor's statements did not rise to the level of vouching for the witness, and because Terry was not denied a fair trial, he has suffered no prejudice. Further, he has offered no cause for his procedural default. Accordingly, he cannot overcome the procedural default, and the court will not consider the claim on its merits.

2. Brady Violation

The state habeas court did not address this claim, because the claim had been addressed on the merits on direct appeal in the state's highest court. Henry v. Warden, 576 S.E.2d 495, 496 (Va. 2003). The claim is ripe for federal habeas review because it was presented to the state's highest court on appeal, giving the state an opportunity to address the issue. The written opinion of the Court of Appeals of Virginia is the last reasoned state court opinion; thus, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the reasoning of the

court of appeals. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). The same deferential standard of review prescribed by § 2254(d) will apply in reviewing the court of appeals' opinion.

The Court of Appeals of Virginia stated a three-part test for determining if there is a true Brady violation: (1) The evidence at issue must be favorable to the accused, because it is either exculpatory or impeaching; (2) The evidence must have been withheld by the state, either willfully or inadvertently; and (3) prejudice must have ensued. Va. Ct. App. R. at 79–80. The appellate court determined that the Commonwealth had provided the defense a standard (blank) copy of the agreement used by police when working with informants and had informed Terry's defense counsel that the CI's signed form was in their records and could be viewed upon request. Right before trial, the Commonwealth produced the signed agreement. This summary of facts is not an unreasonable determination of the facts, and the court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e). The state appellate court further found that defense counsel had the impeaching information in plenty of time to use it effectively during the trial. Review of the transcript amply supports this finding of fact, as well. Because counsel had a verbatim copy of the substance of the blank document and access to the signed document in time to use it effectively at trial, the court held that Terry suffered no prejudice and therefore, no due process violation.

The state court's application of Brady is reasonable and is not contrary to Federal law as applied. "No due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial." United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985). Because the state court's determination of facts and application of law were reasonable, the court must deny this claim.

14

III. Conclusion

After careful review of the petition, the motion to dismiss, and pertinent parts of the state court records, transcripts, and decisions, the court concludes that the respondent's motion to dismiss must be granted.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). Terry has not made a substantial showing of the denial of a constitutional right.

An appropriate order will issue this day.

**ENTER:** This 26th day of March, 2021.

_____

Senior United States District Judge